UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RENO WHITE,<br>Plaintiff,<br>v.<br>U.S. CENTER FOR SAFESPORT,<br>Defendant. | Case No. 24-cv-08028-DMR<br><br>**ORDER DENYING MOTION TO VACATE ARBITRATION AWARD**<br><br>Re: Dkt. No. 23 |

Following an investigation regarding allegations of sexual misconduct, Petitioner Charles Reno White and Respondent U.S. Center for SafeSport ("SafeSport") completed arbitration. On May 5, 2022, the arbitrator upheld White's permanent ban from sport. White now moves to vacate the arbitration decision, citing the California Arbitration Act ("CAA"), Cal. Civ. Proc. Code § 1280 *et seq.*, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. [Docket No. 23 ("Mot.").] SafeSport opposes the motion. [Docket No. 25 ("Opp'n").] White filed a reply. [Docket No. 28 ("Reply").] This matter is suitable for determination without oral argument. *See* Civ. L.R. 7-1(b). For the reasons set forth below, the court denies White's motion to vacate the arbitration decision as untimely.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Part of the Ted Stevens Olympic and Amateur Sports Act, SafeSport was created by Congress to be "a nonprofit organization that 'exercise[s] jurisdiction over . . . each national governing body with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports.'" *Doe v. U.S. Ctr. for SafeSport, Inc.*, No. C23-6067 BHS, 2024 WL 3924663, at *2 (W.D. Wash. Aug. 23, 2024) (quoting 36 U.S.C. § 220541(a)(1)(B); edits in the original). The statute authorizes SafeSport "in its discretion, [to] utilize a neutral arbitration

body and develop policies and procedures to resolve allegations of sexual abuse within its jurisdiction to determine the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official who is the subject of such an allegation." 36 U.S.C. § 220541(c)(1).

White is a 63-year-old former horse-riding instructor and trainer who since 1983 has owned and operated Diamond Mountain Stables in Calistoga, California, and for the last 10 years has worked primarily as a hay broker for Charles White Hay Sales. Mot. at 2; Docket No. 23-11 (White Decl.) ¶¶ 2-3.[1] Following allegations against White, SafeSport conducted an investigation and determined White had engaged in sexual misconduct for some thirty years with various minors and adult women participating in equestrian sports. *See White v. U.S. Ctr. for SafeSport*, No. 22-cv-04468-JD, 2024 WL 4227744, at *1 (N.D. Cal. Sept. 18, 2024). SafeSport banned White from participating in Olympic and Paralympic activities for life, and White was permitted to request review of the ban by an arbitrator. *Id.* On May 5, 2022, Arbitrator Caroline Antonacci upheld the sanction against White for lifetime ineligibility to participate in sport. White Decl. ¶ 4; Docket No. 22-4 (5/5/22 hearing decision).

On August 2, 2022—89 days after the arbitrator issued her decision—White filed a petition in this District to vacate the arbitration decision. *See White I*, ECF No. 1. On September 18, 2024, the Honorable James Donato dismissed the case for lack of subject matter jurisdiction and "without prejudice to a vacatur proceeding in state court, as circumstances might permit." *White I*, 2024 WL 4227744, at *3 (concluding that White had not alleged an amount in controversy to meet the jurisdictional requirement). Thirty-five days later, on October 23, 2024, White filed a petition in state court, and, on November 15, 2024, SafeSport removed the action to this court pursuant to 36 U.S.C. § 220541(d)(3)(A), which permits "[r]emoval to [f]ederal [c]ourt . . . on request by the Center" for "[a]ny civil action brought in a State court against the Center . . . that arises from the

---

[1] Although White describes this document as the "Declaration of Charles White in Support of Motion" (Mot. at 2 n.2), it is in fact titled "Declaration of Charles White – in Support of Response to the Court's Order to Show Cause," bears the case number for *White v. U.S. Ctr. for SafeSport*, No. 22-cv-04468-JD, and is dated April 7, 2023, one year and eight months before White filed the instant motion. It appears to have been initially filed in White's first case, *White v. U.S. Center for SafeSport*, No. 22-cv-04468-JD (N.D. Cal. Aug. 2, 2022) ("*White I*"), at ECF No. 44.

2

execution of the [Center's] responsibilities or functions . . . ." Removal shall be "to the district court of the United States in the district in which the action was brought," and the district court "shall have original jurisdiction over the action without regard to the amount in controversy or the citizenship of the parties involved."[2]  36 U.S.C. § 220541(d)(3)(A).

## II.   LEGAL STANDARDS

Under the FAA, once a controversy has been arbitrated and the arbitrator has made an award, either party to the arbitration may move to vacate the arbitration decision. 9 U.S.C. § 10. Section 10 of the FAA sets forth the exclusive grounds for vacating an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4); *see also Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (holding that "the statutory grounds are exclusive"). Section 10 creates "an extremely limited review authority . . . that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003). That limited judicial review "maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Hall St. Assocs.*, 552 U.S. at 588. "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard." *Kyocera*, 341 F.3d at 994.

"The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) (citation

---

[2] SafeSport explains that the removal statute did not confer original jurisdiction over the case that was before Judge Donato because White filed that case directly in federal court. Opp'n at 2.

1  omitted). Absent a showing of grounds to vacate or modify an arbitration award under Sections 10(a)(3) or 10(a)(4), the court must confirm the award "even in the face of erroneous findings of fact or misinterpretations of law." *Kyocera*, 341 F.3d at 997 (cleaned up). Confirmation is mandatory unless the award is vacated, modified, or corrected as prescribed in Sections 10 and 11 of the FAA. *See* 9 U.S.C. § 9.

Section 12 of the FAA requires that a notice of motion to vacate, modify, or correct an arbitration "be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Courts apply Federal Rule of Civil Procedure 6(a) to calculate the three-month deadline. *See Wilkins v. PayPal, Inc.*, No. 23-cv-02931-VKD, 2023 WL 5420228, at *3 (N.D. Cal. Aug. 22, 2023) (citing *Stevens v. Jiffy Lube Int'l, Inc.*, 911 F.3d 1249, 1251-52 (9th Cir. 2018)).

### III. DISCUSSION

#### A. Waiver

Before turning to the merits of the parties' arguments, the court first addresses whether White waived his right to appeal the final award.

##### 1. The SafeSport Code

On February 14, 2018, Congress enacted the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 (the "SafeSport Act"), Pub. L. No. 115-126, 132 Stat. 318 (2018), which amended the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 *et seq.*, and codified the roles and responsibilities of Defendant United States Center for SafeSport ("SafeSport"). Among other things, the SafeSport Act designated SafeSport "as the independent national safe sport organization" and charged SafeSport with "exercis[ing] jurisdiction over the corporation, each national governing body, and each paralympic sports organization with regard to safeguarding amateur athletes against abuse, including emotional, physical, and sexual abuse, in sports[.]" Pub. L. No. 115-126, 132 Stat. 318, 320 (2018); 36 U.S.C. § 220541(a)(1)(A)-(B).

"In addition to this designation, the SafeSport Act created a statutory framework for SafeSport's operations." *Moore v. U.S. Ctr. for SafeSport*, 774 F. Supp. 3d 887, 893 (E.D. Mich. 2025). Among other things, SafeSport is statutorily required to "maintain an office for

4

education and outreach that shall develop training, oversight practices, policies, and procedures to prevent the abuse, including emotional, physical, and sexual abuse, of amateur athletes participating in amateur athletic activities through national governing bodies[.]" Pub. L. No. 115-126, 132 Stat. 318, 321 (2018); 36 U.S.C. § 220541(a)(1)(C). "The policies and procedures developed under subsection (a)(1)(C) shall apply as though they were incorporated in and made a part of section 220524 of this title." 36 U.S.C. § 220541(b). In other words, "SafeSport's policies and procedures—published as the SafeSport Code for the U.S. and Paralympic Movement . . .—carry the force of federal law." *Moore*, 774 F. Supp. 3d at 893.

The current version of the SafeSport Code for the U.S. and Paralympic Movement went into effect on July 1, 2024 (the "2024 Code") and "applies to all Participants (defined within) in the U.S. Olympic and Paralympic Movement[.]"[3] The 2024 SafeSport Code defines "Participants" as

> Any individual who is seeking to be, currently is, or was at the time of any alleged Code violation:
>
> a. A member or license holder of an NGB, LAO, or the USOPC;
>
> b. An employee or board member of an NGB, LAO, or the USOPC;
>
> c. Within the governance or disciplinary jurisdiction of an NGB, LAO, or the USOPC; or
>
> d. Authorized, approved, or appointed by an NGB, LAO, or the USOPC to have regular contact with or authority over Minor Athletes

2024 SafeSport Code § VIII(L); *see Sanderson v. U.S. Ctr. for SafeSport, Inc.*, No. 21-CV-01771-CMA, 2021 WL 3206322, at *5 (D. Colo. July 29, 2021) ("Participants in Olympic and Paralympic sports agree to follow the SafeSport Code and its resolution procedures, including arbitration as the sole and exclusive method of resolving any challenge to SafeSport's eligibility decisions.").

### 2. Applicability of Section XIV(34)

Section XIV(34) of the 2024 Code, which was in effect when White initiated this action on November 15, 2024, provides that "[t]he Arbitration Decision shall be considered final and binding.

---

[3] U.S. Center for SafeSport, Read the SafeSport Code, https://uscenterforsafesport.org/response-and-resolution/safesport-code/.

1    The parties waive, to the fullest extent permissible by law, any right to challenge in court the
2    Arbitrator Decision." *See also French v. U.S. Ctr. for Safesport*, No. 24-CV-02138-GPG-KAS,
3    2025 WL 864229, at *2 n.5 (D. Colo. Jan. 29, 2025) ("I note that the SafeSport Code contains an
4    appellate waiver whereby the 'parties waive, to the fullest extent permissible by law, any right to
5    challenge in court the arbitrator's decision' . . . . Petitioner thus lacks any right of review that goes
6    beyond the narrow statutorily and judicially recognized grounds for vacatur . . . .") (citation
7    omitted). The 2021, 2022, and 2023 versions of the SafeSport Code for the U.S. and Paralympic
8    Movement also contain this provision. 2021 Code § XIV(34); 2022 Code § XIV(34); 2023 Code
9    § XIV(34).

10   As the parties' briefs did not address this issue, the court ordered supplemental briefing on
11   the question of whether section XIV(34) of the 2024 Code (or any prior version of the Code) applies
12   here, and, if so, the scope of the waiver. [Docket No. 35.] The parties' joint response contends that
13   section XIV(34) does not apply because the FAA does not allow parties to contractually waive their
14   right to judicial review. [Docket No. 36 at 1-2 (citing *In re Wal-Mart Wage & Hour Emp. Pracs.*
15   *Litig.*, 737 F.3d 1262, 1268 (9th Cir. 2013).]

16   The court agrees that the FAA does not permit waiver. *See In re Wal-Mart*, 737 F.3d at 1267
17   ("Just as the text of the FAA compels the conclusion that the grounds for vacatur of an arbitration
18   award may not be supplemented, it also compels the conclusion that these grounds are not waivable,
19   or subject to elimination by contract."); *Blair v. INFORM Software Corp.*, No. 22-CV-06000-LB,
20   2023 WL 137471, at *9 (N.D. Cal. Jan. 8, 2023) ("Contracting parties cannot waive the FAA's
21   provisions for judicial review of arbitration awards.") (citing *In re Wal-Mart*, 737 F.3d at 1268).

22   However, the parties' supplemental brief does not acknowledge the fact that White brings
23   his motion not just under the FAA, but also the CAA. *See* Mot. at ii ("PLEASE TAKE NOTICE
24   that . . . Petitioner Charles White will move the Court for an Order vacating the Arbitration Award
25   of May 5, 2022, issued by Arbitrator pursuant to the California Arbitration Act (CAA; CCP § 1280
26   et seq.)."); *id.* at 1 ("Petitioner respectfully moves this court, pursuant to the California Arbitration
27   Act (CAA; CCP § 1280 et seq.) and the Federal Arbitration Act, 9 U.S.C. § 10, to vacate an
28   arbitration award rendered on May 5, 2022 . . . .").

6

Unlike with the FAA, parties may waive their right to judicial review under the CAA. *See Cooper v. Lavely & Singer Pro. Corp.*, 230 Cal. App. 4th 1, 19 (2014) ("[P]arties may waive their rights to judicial review of an arbitration award, [provided that] any such waiver must be 'clear and express.'") (citing *Reisman v. Shahverdian*, 153 Cal. App. 3d 1074, 1088–89 (1984); *Pratt v. Gursey, Schneider & Co.*, 80 Cal. App. 4th 1105, 1108 (2000)).

In *Pratt*, the California Court of Appeal held "there was an express waiver of the right to appeal" an arbitrator's final award. 80 Cal. App. 4th at 1108. Specifically,

> the STIPULATION RE BINDING ARBITRATION, AND ORDER THEREON provided: the "entire dispute between the parties" was to be "submitted to a final determination by binding arbitration"; the right to a trial by judge or jury was "expressly waived"; and "the right to appeal from the arbitrator's award or any judgment thereby entered or any order made" was "expressly waived."

*Id.* (capitalization in the original). "This constituted an express waiver of the right to secure appellate review." *Id.*

The court finds that the waiver in section XIV(34) is similar to that in *Pratt*. Section XIV(34) provides that "[t]he Arbitration Decision shall be considered final and binding. The parties waive, to the fullest extent permissible by law, any right to challenge in court the Arbitrator Decision." As noted above, case law is clear that parties may waive their right to challenge an arbitration award in court under the CAA ("to the fullest extent permissible by law"). *See Cooper*, 230 Cal. App. 4th at 19; *Reisman*, 153 Cal. App. 3d at 1088-89; *Pratt*, 80 Cal. App. 4th at 1108. Moreover, by "waiv[ing] . . . any right to challenge in court the Arbitrator Decision," White clearly agreed to forgo judicial review ("challenge in court") of the final award ("the Arbitrator Decision").

Accordingly, the court finds that White waived his right to appeal the arbitrator's final award under the CAA, but will consider the motion under the FAA.

**B.     Equitable Tolling**

The parties' briefing raises three issues: (1) whether White's petition is untimely and, if so, whether equitable tolling permits the court to consider White's motion; (2) whether the arbitrator exceeded her authority by failing to issue a "reasoned" award; and (3) whether the arbitration award shows partiality by the arbitrator. The court determines that White's petition is untimely. It

7

therefore does not reach the remaining two issues.

White appears to concede that his motion to vacate the arbitration award is untimely. Rather, he argues the court should apply principles of equitable tolling "to toll the statute of limitations during the pendency of Mr. White's federal action." Mot. at 16-18. SafeSport does not dispute that equitable tolling applies for the period of time White's first petition was pending before Judge Donato (778 days between the August 2, 2022 filing date to the September 18, 2024 dismissal). Opp'n at 10. However, SafeSport contends that White's motion is still untimely because he took 124 days to file his motion to vacate the arbitrator's award: 89 days elapsed between the arbitrator's decision and the filing of White's original lawsuit, and an additional 35 days passed after Judge Donato dismissed that case until White refiled his action in state court on October 24, 2024. SafeSport argues that White's challenge to the arbitrator's decision is therefore untimely because it exceeds the three-month deadline in Section 12 of the FAA.[4] *Id.* at 8-10. In reply, White does not engage with SafeSport's analysis; instead, he asserts his motion to vacate should be deemed timely because he "promptly refiled his Petition in state court within 30 days of Judge Donato's dismissal," and SafeSport was not prejudiced. Reply at 1-2.

SafeSport is correct that White's action was untimely under the FAA, which requires a motion to vacate to be served within three months after the award is filed or delivered. 9 U.S.C. § 12. A total of 902 days elapsed between the arbitrator's decision on May 5, 2022, and White's filing of his petition in state court on October 23, 2024. White first filed his petition in this district on August 2, 2022, which is 89 days after the arbitration award was issued. *See White I*, ECF No. 1. A further 35 days elapsed between September 18 and October 23, 2024. After tolling the period during which his case was pending before Judge Donato, White still filed his petition in state court 124 days after the May 5, 2022 arbitral award. This amount of time clearly exceeds the strict three-month window allowed by the FAA. *See, e.g.*, *Stevens*, 911 F.3d at 1251 (applying 9 U.S.C. § 12 and Rule 6 to determine that petition to vacate arbitral award filed on December 15, 2016 following

---

[4] SafeSport also notes that White exceeded the 100-day deadline set forth in section 1288 of the CAA. Opp'n at 2, 9-10. As noted above, White waived the right to appeal the arbitrator's decision under the CAA.

8

1   arbitrator award on September 14, 2016 was untimely).

2   Therefore, White must establish that equitable tolling should apply beyond the time his earlier case was pending before Judge Donato. "[T]he FAA is subject to the established doctrine of equitable tolling." *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016); *see Next Level Ventures, LLC v. Avid Holdings, Ltd.*, No. 23-35404, 2024 WL 4457232, at *1 (9th Cir. Oct. 10, 2024) (district court did not abuse its discretion finding that defendant was not entitled to equitable tolling of deadline to file motion to vacate arbitration award). Equitable tolling exists "to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (cleaned up).

As a preliminary matter, the court notes that although White brings his motion under the FAA, he analyzes equitable tolling only under California law. Mot. at 17 ("A plaintiff seeking the benefit of equitable tolling must show three elements: 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.'") (quoting *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 (2008)). SafeSport, on the other hand, relies on federal law. Opp'n at 10 ("A party seeking equitable tolling 'bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'") (quoting *Next Level Ventures*, 2024 WL 4457232, at *1; additional citation omitted). Neither party explains why state versus federal law applies, or why the other side applies the incorrect law. *See generally* Opp'n, Reply.

The court follows federal law here. Federal courts confronted with motions to vacate arbitration awards have analyzed equitable tolling under federal law. *See, e.g.*, *Move, Inc.*, 840 F.3d at 1158 (Although equitable tolling applies to FAA, "[b]ecause neither Move nor Citigroup addressed on appeal the separate question of whether Move satisfied the substantive requirements of equitable tolling, that issue has been waived. . . . Regardless, we agree with the district court's findings that (1) Move acted with due diligence in pursuing its claim, as it justifiably relied on the information provided by FINRA; and that (2) tolling would not prejudice Citigroup under the circumstances."); *Next Level Ventures*, 2024 WL 4457232, at *1 (Applying equitable tolling in

appeal of denial of motion to vacate arbitration award as untimely under the FAA; "[t]he district court did not abuse its discretion in determining that Avid is not entitled to equitable tolling. A party seeking equitable tolling 'bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'") (citations omitted); *A. Miner Contracting, Inc. v. Dana Kepner Co., Inc.*, 696 F. App'x 234, 235 (9th Cir. 2017) (Applying equitable tolling in appeal of dismissal of motion to vacate arbitration award as untimely under the FAA; "[t]olling is not warranted in this case because Miner did not act with due diligence . . .").

White's cited cases are distinguishable because they concern equitable tolling of state law statutes of limitations, not a motion to vacate an arbitration award under the FAA. *See, e.g.*, *McDonald*, 45 Cal. 4th at 96 ("We granted the District's petition for review, limited to a single issue pertinent only to the analysis of Brown's claims: May equitable tolling apply to the voluntary pursuit of internal administrative procedures prior to filing a FEHA claim?"); *Metabyte, Inc. v. Technicolor S.A.*, 94 Cal. App. 5th 265, 276-80 (2023), *review denied* (Nov. 15, 2023) (considering whether French shareholder action equitably tolled state law claims); *Brome v. California Highway Patrol*, 44 Cal. App. 5th 786, 794 (2020) (issue on appeal was whether the "filing of [the plaintiff's] workers' compensation claim could equitably toll the one-year deadline for filing his discrimination claim with the Department of Fair Employment and Housing"); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (applying California's test for equitable tolling after finding that "California's one-year statute of limitations for personal injury actions applies to Cervantes' section 1983 claim."). In sum, the federal law of equitable tolling applies to the extent White brings his motion pursuant to the FAA.

Under federal law, the party invoking "equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Kwai Fun Wong*, 732 F.3d at 1052 (cleaned up). The first element "requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances. Central to the analysis is whether the plaintiff was without any fault in pursuing his claim." *Id.* (cleaned up). The second element requires a litigant to show that "extraordinary

10

circumstances," including "external circumstances beyond [the litigant's] direct control," caused the "untimeliness and . . . ma[de] it impossible to file [the document] on time." *Id.* (quotations omitted). Equitable tolling does not extend to "what is at best a garden variety claim of excusable neglect." *Balan v. Tesla Motors, Inc.*, No. 19-cv-00449-EMC, 2019 WL 1411223, at *2 (N.D. Cal. Mar. 28, 2019) (*quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

White does not meet his burden to apply equitable tolling beyond the pendency of his earlier case. In fact, he makes no attempt to explain his delay at all, and therefore fails to demonstrate his diligence as well as the "extraordinary circumstances" beyond his control that resulted in his untimely filing. There is no obvious reason why he could not have acted in a timely manner. For example, White essentially concedes that he expended little extra effort in re-filing his petition after *White I* was dismissed; he repeatedly asserts that the re-filed petition is "substantively" or "almost identical" to the suit he initially filed. Mot. at 1, 17. Instead, White inappropriately attempts to shift his burden to his opponent. Reply at 1-2 ("SafeSport makes no argument whatsoever that Petitioner failed to pursue his rights diligently . . ."); *see U.S. Life Ins. Co.*, 591 F.3d at 1173.

In sum, White has failed to carry his burden of establishing that he pursued his rights diligently, and that extraordinary circumstances stood in his way of filing a timely petition to vacate the arbitration award. *See Kwai Fun Wong*, 732 F.3d at 1052. The court accordingly denies his request to apply equitable tolling beyond the time *White I* was pending.

Finally, White attempts to rely on 28 U.S.C. § 1367(d), the supplemental jurisdiction statute, which he argues provided a 30-day "grace period" following Judge Donato's dismissal of *White I*. Mot. at 18 (citing *Artis v. Dist. of Columbia*, 583 U.S. 71, 744-45 (2018)).[5] White's argument misconstrues the statute. There was no supplemental jurisdiction in *White I* because there were no

---

[5] 28 U.S.C. § 1367(d) says

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

11

1    state claims. White brought only an FAA claim, which Judge Donato dismissed based on lack of

2    diversity jurisdiction. *White I*, 2024 WL 4227744, at *1-3. As SafeSport explains, because White

3    did not bring any state law claims in his prior federal action, there are no state law claims that would

4    have benefited from the 30-day grace period.[6] *See* Opp'n at 10-11 n.8.

5          In sum, for the foregoing reasons, White's motion to vacate the arbitration award is untimely

6    under the FAA, and he fails to meet his burden to establish that equitable tolling should apply here.

7    The motion to vacate is denied.

### IV.   MOTIONS FOR LEAVE TO FILE UNDER SEAL

9          Both parties filed motions for leave to file under seal in connection with their briefs. [Docket

10   Nos. 22, 26, 27.]

11         Civil Local Rule 79-5(b) states that "no document may be filed under seal (i.e., closed to

12   inspection by the public) except pursuant to a court order that authorizes the sealing of the particular

13   document, or portions thereof. A sealing order may issue only upon a request that establishes that

14   the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled

15   to protection under the law (hereinafter referred to as 'sealable')." Furthermore, "[r]eference to a

16   stipulation or protective order that allows a party to designate certain documents as confidential is

17   not sufficient to establish that a document, or portions thereof, are sealable." Civ. L.R. 79-

18   5(d)(1)(A).

19         In assessing whether documents may be filed under seal, there is "a strong presumption in

20   favor of access." *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1135 (9th Cir. 2003). In

21   accordance with the strong public policy favoring access to court records, "[a] party seeking to seal

22   a judicial record . . . bears the burden of overcoming this strong presumption by meeting the

23   'compelling reasons' standard." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th

24   Cir. 2006). "Under this stringent standard, a court may seal records only when it finds 'a compelling

25   reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'"

---

[6] Moreover, even if a 30-day grace period applied, White's state court filing would still be four days late.

*Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–97 (9th Cir. 2016) (quoting *Kamakana*, 447 F.3d at 1179). Those reasons must "outweigh the general history of access and the public policies favoring disclosure, such as the 'public interest in understanding the judicial process.'" *Kamakana*, 447 F.3d at 1178-79 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). The court must "conscientiously balance[ ] the competing interests of the public and the party who seeks to keep" the records secret. *Id.* at 1179.

The Ninth Circuit has "carved out an exception to the presumption of access to judicial records" for "court records attached only to non-dispositive motions." *Id.* (quoting *Foltz*, 331 F.3d at 1135). The court reasoned that "the public has less of a need for access to court records attached only to non-dispositive motions because those documents are often 'unrelated, or only tangentially related, to the underlying cause of action.'" *Id.* (quoting *Foltz*, 331 F.3d at 1135). "A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Id.* at 1180 (citing *Foltz*, 331 F.3d at 1135). The Ninth Circuit has distinguished "dispositive" and "non-dispositive" motions. *Ctr. for Auto Safety*, 809 F.3d at 1097-98. These terms are not "mechanical classifications" and "public access [to judicial records] will turn on whether the motion is more than tangentially related to the merits of a case." *Id.* at 1097, 1101. Therefore, a party must satisfy the more demanding "compelling reasons" standard to seal a motion that is more than tangentially related to the merits of the case. *Id.* at 1101-02.

As White's motion to vacate the arbitration award is more than tangentially related to the underlying cause of action, the court finds the "compelling reasons" standard applies. *See, e.g.*, *Equicare Health Inc. v. Varian Med. Sys., Inc.*, No. 21-MC-80183-EJD, 2022 WL 2674204 (N.D. Cal. June 28, 2022) (applying compelling reasons standard to sealing motion filed in connection with opposition to petition to vacate or correct arbitration award); *Bloom Energy Corp. v. Badger*, No. 21-CV-02154-PJH, 2021 WL 4079208, at *12 (N.D. Cal. Sept. 8, 2021) ("[T]he court finds that the compelling reasons standard applies" to motion to confirm arbitration award).

### A. White's Motions for Leave to File Under Seal

White moves to file under seal portions of his motion and reply, as well as Exhibits 1-5 and 14 to the Declaration of Howard L. Jacobs in Support of Charles White's Petition to Vacate

13

Arbitration Award ("Jacobs Declaration") and Exhibit 1 to the Declaration of Howard L. Jacobs – Reply in Support of Motion to Vacate ("Jacobs Reply Declaration").

As a preliminary matter, White incorrectly relies on California state court procedures for filing documents under seal, rather than this court's Civil Local Rules. [*See* Docket No. 22 at 3 ("Pursuant to CCP 2.551 Petitioner also filed unredacted versions of these Exhibits as conditionally under seal and marked with the notation 'May not be examined without court order – contains material from conditionally sealed record' . . ."); Docket No. 27 at 3 ("Pursuant to CCP 2.551 Petitioner also filed unredacted versions of the Reply and Exhibit 1 as conditionally under seal and marked with the notation 'May not be examined without court order – contains material from conditionally sealed record'.").] The California Code of Civil Procedure does not apply to sealing motions filed in federal court. *But see* Civ. L.R. 79-5 (local rule governing "filing documents under seal in civil cases").

Moreover, although White seeks to seal only portions of his motion and reply, the unredacted versions of these documents do not highlight the portions sought to be sealed, as required by Civil Local Rule 79-5(e)(2). Civ. L.R. 79-5(e)(2) ("For redacted pleadings and briefs, the following procedure applies: . . . The unredacted version must include the phrase 'FILED UNDER SEAL' prominently marked on the first page and must highlight the portions for which sealing is sought."). His motions and proposed orders also do not identify which portions of the motion and reply are sought to be sealed, inappropriately leaving to the court the task of comparing the unredacted and redacted versions to determine precisely what White proposes to be sealed.

White contends that good cause exists to seal these documents. [Docket No. 22 at 2; Docket No. 27 at 2.] However, he fails to address whether his "motion [to vacate] . . . is more than tangentially related to the underlying cause of action," such that the "good cause" or "compelling reasons" standard applies. *Ctr. for Auto Safety*, 809 F.3d at 1099-101; *see* Civ. L.R. 79-5(c) ("The [sealing] motion must include the following: (1) a specific statement of the applicable legal standard . . ."). Indeed, rather than analyze the applicable sealing standard under applicable Ninth Circuit authority, White cites an out-of-circuit case, *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016). [Docket No. 22 at 5; Docket No. 27 at 4.] For the reasons

set forth above, the court rejects the application of the less-stringent good cause standard. Instead, the parties must establish compelling reasons to seal the material at issue from public view.

### 1. Motion to Vacate [Docket No. 22-3]

The court denies White's request to seal portions of his motion to vacate. White filed two motions to vacate in *White I*, the first in 2022 and the second in 2024. *White I*, ECF Nos. 6, 52-1. He did not seek leave to file either motion under seal and filed both on the public docket.

The two *White I* motions contain the same language that White seeks to redact in his instant motion to vacate, including the initials of the claimants,[7] quotes from the Investigative Report, and screenshots of social media posts. *See also* Mot. at 1 ("Petitioner files this Motion following the September 18, 2024 dismissal of a substantively identical motion filed on August 2, 2022 in the United States District Court for the Northern District of California, Case No. 3:22-cv-04468 . . ."). White fails to acknowledge the prior public disclosure of this information, let alone explain why it should now be sealed. The court therefore denies the sealing as to the motion to vacate.

### 2. SafeSport Documents [Docket Nos. 22-5 & 22-6]

White moves to seal in their entirety the SafeSport Modified Notice of Decision (Docket No. 22-5) and the SafeSport Investigation Report (Docket No. 22-6), both dated February 2022 and filed in Case No. 2021-01627.

As is relevant here, 36 U.S.C. § 220541(f)(4)(C)(I) provides that "[a]ny decision, report, memorandum, work product, notes, or case file of the Center . . . shall be confidential[.]" As documents are a decision and a report, the court finds that they fall within the scope of § 220541(f)(4)(C)(I) and that sealing is largely justified. However, sealing the Modified Notice of Decision and Investigation Report in their entirety is overbroad in light of the fact that White has publicly disclosed certain portions of them in the *White I* docket. Thus, any portions of the Modified Notice of Decision and Investigation Report that are quoted and not redacted in public filings shall

---

[7] With respect to the disclosure of the claimants' initials, the court finds that providing their initials, rather than their full names, is sufficient to protect their identities. *See, e.g.*, Fed. R. Civ. P. 5.2 ("[I]n an electronic . . . filing with the court that contains . . . the name of an individual known to be a minor . . . a party . . . making the filing may include only . . . the minor's initials[.]").

15

1 remain unredacted; the remaining portions may be filed under seal.

### 3. JAMS Filings [Docket Nos. 22-4, 22-7 & 22-8]

White seeks to seal certain filings from the arbitration: (1) the May 5, 2022 hearing decision (Docket No. 22-4); (2) White's April 6, 2022 pre-hearing brief (Docket No. 22-7); and (3) exhibits filed in connection with White's April 6, 2022 pre-hearing brief (Docket No. 22-8). White cites section 11(S) of the 2023 SafeSport Code for the U.S. Olympic and Paralympic Movement for the proposition that "all documents or evidence submitted to or prepared by the arbitrator, including any hearing transcripts" "must remain confidential, in that they may not be disclosed outside of the proceedings, except as may be required by law or authorized by the Center" and that the disclosure of such materials "may constitute an Abuse of Process."[8] [Docket No. 22 at 4 (internal quotation marks omitted).]

The motion is granted in part and denied in part as to the May 5, 2022 arbitration award. There is no basis to redact the portions of the award that are quoted in the publicly-filed *White I* motions to vacate. *See, e.g.*, *White I*, ECF No. 6 at 18:3, 22:13; *id.*, ECF No. 52-1 at 2:6, 14:6, 21:13.[9] The remaining portions of the arbitration award may be filed under seal.

The motion is granted in part and denied in part as to White's April 6, 2022 pre-hearing brief and exhibits. The *White I* motion to vacate purports to summarize "arguments [that] were raised in Mr. White's Pre-Arbitration submissions." *White I*, ECF No. 52-1 at 5 n.8. In fact, the *White I* motion to vacate copies nearly verbatim several portions of White's April 6, 2022 pre-hearing brief. *E.g., compare White I* ECF No. 52-1 at 5:11-6:22 *with* Docket No. 22-7 ¶¶ 2.2.2.5.1 - 2.2.2.6; *compare White I* ECF No. 52-1 at 5:11-6:22, 6:24-7:22 *with* Docket No. 22-7 ¶¶ 2.2.3.1- 2.2.3.7; *compare White I* ECF No. 52-1 at 7:24-8:11 *with* Docket No. 22-7 ¶¶ 2.2.4.1- 2.2.4.3; *White I* ECF No. 52-1 at 8:25-10:22 *with* Docket No. 22-7 ¶¶ 2.3.1- 2.3.4; *compare White I* ECF No. 52-1 at

---

[8] It is unclear why White cites the 2023 SafeSport Code when the 2024 Code, which went into effect on July 1, 2024, applied at the time he filed his sealing motion.

[9] These and other citations in this section are merely exemplary and not exclusive. It is incumbent on White to carefully determine which portions of the pre-hearing materials he previously placed in the public record.

1   10:24-11:5 *with* Docket No. 22-7 ¶ 2.4.1. While the claimants' names may be redacted, there is no basis to otherwise seal the portions of the pre-hearing brief and exhibits that have already been publicly disclosed.

### 4. *White I* Motion to Vacate [Docket No. 22-9]

This document is titled "Petitioner Charles White's Memorandum of Points and Authorities in Support of Second Motion to Vacate Arbitration Award," filed in *White I*. *White I*, ECF No. 52-1. The court denies the request to seal this document.

As a preliminary matter, it is unclear what document White intended to attach. Although the cover sheet for Docket No. 22-9 states "Exhibit 15," White's sealing papers refer to it as "Exhibit 14." [Docket No. 22 at 2 ("Petitioner CHARLES WHITE hereby moves for leave of Court to file unredacted versions of his Memorandum of Points and Authorities and Exhibits 1-5 and 14 to his Motion to Vacate Arbitration Award under seal."); *id.* ("'Exhibit 14' is Petitioner's Unredacted Second Motion to Vacate Arbitration Award, filed in US District Court."); Docket No. 22-1 (Jacobs Sealing Decl.) ¶ 2 ("I submit this Declaration in Support of Petitioner's Application to file an Unredacted copy of his Memorandum of Points and Authorities and Exhibits 1-5 and 14 in support of his Motion to Vacate Arbitration Award under seal.").]

Similarly, the Jacobs Declaration identifies an Exhibit 14, but not an Exhibit 15. [*See* Docket No. 23-1 (Jacobs Decl.) ¶ 18 ("Petitioner will file an Application for Leave to File his United States District Court Memorandum in Support of Second Motion to Vacate as Exhibit 14.").] However, White does not include a slip sheet for this exhibit in his redacted filing, and instead omits it in its entirety. *See* Civ. L.R. 79-5(d) ("Where the document to be sealed is . . . an exhibit to a document filed electronically, an otherwise blank page reading 'EXHIBIT FILED UNDER SEAL' shall replace the exhibit in the document filed on the public docket . . ."). To add to the confusion, White does not cite any "Exhibit 14" in his motion to vacate but does cite an "Exhibit 15." [*See* Mot. at 17.]

In any event, the court finds that sealing is not warranted. Despite describing this document as his "**Unredacted** Second Motion to Vacate Arbitration Award" (Docket No. 22 at 2 (emphasis added)), White previously filed this document on the public docket of *White I*, did not move to file

it under seal then, and did not otherwise file a redacted version. *See White I*, ECF No. 52-1. White fails to explain why it needs to be sealed now, particularly where it has been publicly available since June 21, 2024. The motion to seal is therefore denied.

### 5. Reply [Docket No. 27-3] & Jacobs Reply Decl., Ex. 1 [Docket No. 27-4]

White moves to file under seal portions of the reply that contain "an excerpt from the Award in Confidential JAMS Case No. 1501000411," as well as the entirety of the arbitration's Preliminary Hearing Report and Scheduling Order, submitted as Exhibit 1 to the Jacobs Reply Declaration. White argues that these documents are confidential and should be sealed "[i]n accordance with the 2023 SafeSport Code at Section 11(S)" and 36 U.S.C. § 220541(f)(4)(C)(i). [Docket No. 27 at 2.] The court grants the motion to seal these documents.

### B. SafeSport's Motion for Leave to File Under Seal

SafeSport seeks leave to file under seal portions of its opposition that quote the Arbitrator's hearing decision, the SafeSport Modified Notice of Decision, and the SafeSport Confidential Investigation Report.[10] The court grants the motion.

### V. CONCLUSION

The court rules as follows:

1. White's motion for leave to file under seal (Docket No. 22) is granted in part and denied in part. White's motion for leave to file under seal (Docket No. 27) is granted. Within 7 days of this order, White shall refile his motion and exhibits, consistent with this order. Lead counsel for White shall concurrently file a declaration, signed under penalty of perjury, attesting that he personally reviewed all re-filed documents and that such documents only redact material as permitted by this order.

2. SafeSport's motion for leave to file under seal (Docket No. 26) is granted.

3. White's petition to vacate the arbitration decision is denied as untimely. The Clerk of Court shall close this case.

---

[10] SafeSport moved to file the same portions under seal in its opposition filed in *White I*. *White I*, ECF No. 55.

**IT IS SO ORDERED.**

Dated: September 29, 2025

_____
Donna M. Ryu
Chief Magistrate Judge